UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** <br>                 **Plaintiff,** <br>    v. <br> **FREDERICK L. SHARP, ZHIYING YVONNE GASARCH, COURTNEY KELLN, MIKE K. VELDHUIS, PAUL SEXTON, JACKSON T. FRIESEN, WILLIAM T. KAITZ, AVTAR S. DHILLON, and GRAHAM R. TAYLOR,** <br>                 **Defendants.** | 21-cv-11276-WGY |

### PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION, ASSET FREEZE, AND ORDER FOR OTHER EQUITABLE RELIEF

Pursuant to Fed. R. Civ. P. 65(a), plaintiff Securities and Exchange Commission ("the Commission") hereby files this motion for entry of a preliminary injunction, asset freeze, and order for other equitable relief. A proposed form of Order is attached. In support of this motion, the Commission sets forth below relevant facts and legal precedent. In addition, the Commission relies upon the Complaint (Dkt. No. 1), the Memorandum in Support of the Commission's Motion for a Temporary Restraining Order, Order Freezing Assets and Order for Other Equitable Relief (Dkt. No. 4), and the Declaration of Trevor T. Donelan ("Donelan Dec.") (Dkt. No. 1-13) that were submitted in support of its Emergency Ex Parte Motion for a Temporary Restraining Order, Order Freezing Assets and Order for Other Equitable Relief (Dkt. No. 3).

### BACKGROUND

This case concerns interlocking, sophisticated, multi-year, international fraudulent schemes perpetrated by the Defendants to sell stock belonging to public company control

persons to unsuspecting investors in the public markets, some of whom were also victimized by simultaneous fraudulent promotions designed to inflate the stock's price and volume. The public companies whose stock was sold in this scheme were mostly "penny stock" companies, generally small companies whose stock trades at less than $5 per share. The offers or sales of stock held by control persons generally must be registered with the Commission before the stock can be offered or sold. Otherwise, that stock is subject to sale limitations. Stock held by control persons is also frequently subject to public disclosure obligations. These legal requirements create market transparency by giving investors access to material information, including information identifying from whom the investors are (or would be) buying stock, the identities of the control persons of the company in which investors are investing, and what those control persons are doing with their own stock.

    As detailed below, Defendants Dhillon, Veldhuis, Friesen, Sexton, and Taylor were control persons of various penny stock companies who schemed to sell fraudulently those companies' stock to retail investors through offshore trading platforms in order to conceal their conduct from investors, securities market intermediaries, regulators, and law enforcement. Defendant Sharp, along with his team of Kelln and Gasarch, provided one-stop-shopping to support the fraudulent conduct of their control person clients: an array of offshore front companies with banking and brokerage accounts scattered across more than a dozen bank-secrecy jurisdictions, encrypted communications networks, and an accounting system to track illegal sales on multiple foreign trading platforms and organize disbursements of fraudulent proceeds around the world. They charged their control group clients, including Veldhuis, Sexton and Friesen, lucrative fees to facilitate their fraudulent dumps of shares of hundreds of public companies into the U.S. market for more than a decade. In addition to employing Sharp and his

team, Defendants Veldhuis, Sexton and Friesen often employed and bankrolled stock promoters like Defendant Kaitz. Kaitz ran promotions to encourage retail investors to buy the shares his employers were fraudulently selling into the demand he created – all while concealing that he was being paid by those sellers and depriving investors of the full and fair information to which the federal securities laws entitle them.

The conduct described herein has left a wake of harmed investors; many people who bought control persons' stock, often in the aftermath of promotional campaigns designed to increase the stocks' price, are now left with nearly worthless shares. *See* Donelan Dec., ¶¶28, 96, 102-103.

In light of this conduct, the Commission has charged the Defendants with engaging in, or aiding and abetting, schemes to defraud in violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rules 10b-5(a) and (c) thereunder, and Sections 17(a)(1) and (3) of the Securities Act of 1933 (the "Securities Act"). *See* Complaint, Counts 1-2, 7-14. The Commission has also charged all Defendants except Gasarch, Taylor, and Kaitz with selling unregistered stock in violation of Sections 5(a) and (c) of the Securities Act. *See id.*, Count 3. The Complaint pleads additionally that Veldhuis, Sexton, Friesen and Dhillon violated Section 13(d) of the Exchange Act and either Rules 13d-1 or 13d-2 thereunder by failing to report that they were beneficial owners of more than 5% of shares in a particular company (*see id.*, Counts 4-5), and that Dhillon also violated Section 16(a) of the Exchange Act and Rule 16a-3 thereunder by failing to file required reports of his ownership and changes in his ownership of two other companies (*see id.*, Count 6).

## PROCEDURAL POSTURE

On August 6, 2021, the Court granted the Commission's motion for a temporary

restraining order ("TRO"), which, among other things, authorized the Commission to serve the Defendants by email. Dkt. No. 7. The Commission promptly notified each Defendant of the TRO and then effected service on each Defendant once the summonses were issued. *See* Dkt. Nos. 12-18, 23 (proof of service as to eight Defendants).[1] To date, only counsel for Defendant Kaitz has appeared in this case, although the Commission's counsel has also been involved in negotiations with counsel for Defendant Dhillon concerning potential carve-outs to the requested asset freeze order.

## ARGUMENT

In the First Circuit, a preliminary injunction "may be granted if the movant shows a likelihood of success on the merits, a risk of irreparable harm, a favorable balance of equities, and that the injunction would be in the public interest." *SEC v. Fife*, 311 F.3d 1, 8 (1st Cir 2002). "The '*sine qua non*' of a preliminary injunction analysis is whether the plaintiff is likely to succeed on the merits of its claim." *Id*.

As set forth in detail in the Commission's memorandum of law in support of its motion for a TRO (Dkt. No. 4)—incorporated by referenced herein—the evidence establishes that the Commission is likely to succeed on the merits of its fraud claims, warranting the issuance of the requested orders. *See* Dkt. No. 4 at 20-27. Indeed, the United States Attorney's Office for the District of Massachusetts has filed criminal charges against Defendants Sharp, Kelln, Veldhuis and Dhillon for their roles in related securities fraud schemes. *See United States v. Sharp, et al.*, No. 21-mj-7182-JCB (filed Aug. 4, 2021); *United States v. Dhillon*, No. 21-mj-7174-JCB (filed

---

[1] The Commission has not yet filed a proof of service for defendant Kaitz. The Commission has been negotiating with Kaitz's counsel over the terms of a potential agreement as to a preliminary injunction between it and Kaitz. Kaitz's counsel has indicated that he will waive service and the Commission's counsel will file that waiver of service with the Court as soon as it receives it.

Aug. 3, 2021). And, the Defendants whom the Commission charged with Section 5 violations (*i.e.*, all of the Defendants except Gasarch, Kaitz and Taylor) are <u>strictly</u> liable for selling shares of stock without an effective registration statement or pursuant to an applicable exemption. *See id.* at 28-30; *SEC v. Longfin Corp.*, 316 F. Supp. 3d 743, 748, 756 (S.D.N.Y. May 1, 2018) (granting preliminary injunction freezing assets for alleged violations of Section 5 of the Securities Act). *See* Complaint. ¶¶63, 75, 77,86, 110, 118, 167, 169, 17, 179, 187, 196, 212, 218.

The other three factors in the preliminary injunction analysis also strongly weigh in favor of the requested relief. The Defendants' years-long fraudulent scheme with respect to numerous securities was undergirded by deception, the use of dozens of nominee entities, and the transfer of funds around the world to avoid detection. These factors show that absent the requested relief, the Commission is likely to suffer irreparable harm because the defendants are likely to hide funds that will hamper the Commission's ability to collect the monetary judgments it expects to receive. Collectively, Defendants took advantage of the investors in public U.S. securities markets who spent millions of dollars investing in fraudulent schemes they orchestrated. *See* Complaint. ¶1; Donelan Dec.,¶16, 44, 60, 74, 75, 84, 91, 94. The public interest is clearly in restraining them from further securities law violations and in preserving their funds to compensate the investors who were harmed by their conduct. The final factor, the balance of the equities, also favors granting the requested injunctive relief. Defendants have no protectable interest in continuing their fraudulent schemes or in disposing of money that should rightfully be secured to compensate those who were victimized by their actions.

## **CONCLUSION**

In light of the foregoing, the Commission respectfully requests that the Court enter an order in the form attached hereto that would prevent Defendants from engaging in further

violations of the securities laws; freeze assets and restrain accounts belonging to all of the Defendants; require funds to be repatriated to the United States by all of the Defendants; and permit alterative service of the proposed preliminary injunction, asset freeze, and order for other equitable relief, if granted.

To the extent the Commission is able to work out a modification of the requested preliminary injunction with any Defendant before the Court conducts a hearing on the requested injunction, the Commission will file a proposed updated order with respect to that Defendant.

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION
By its attorneys,

/s/ Eric A. Forni
Eric A. Forni (Mass Bar No. 669685)
Kathleen Burdette Shields (Mass Bar No. 637438)
SECURITIES AND EXCHANGE COMMISSION
Boston Regional Office
33 Arch St., 24th Floor
Boston, MA 02110
Phone: (617) 573-8827 (Forni direct), (617) 573-8904 (Shields direct)
Fax: (617) 573-4590 (fax)
Fornie@sec.gov; Shieldska@sec.gov

DATED: August 13, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2021, a true and correct copy of the foregoing document was filed through the Court's CM/ECF system, and accordingly, the document will be sent electronically to all participants registered to receive electronic notice in this case. A copy will also be sent via first class mail and/or email to those parties who have not yet registered for notice via the Court's CM/ECF system.

/s/ Eric A. Forni
Eric A. Forni