**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>FREDERICK L. SHARP, ZHIYING YVONNE GASARCH, COURTNEY KELLN, MIKE K. VELDHUIS, PAUL SEXTON, JACKSON T. FRIESEN, WILLIAM T. KAITZ, AVTAR S. DHILLON, and GRAHAM R. TAYLOR,<br><br>Defendants. | Case No. 21-cv-11276-WGY<br><br>**LEAVE TO FILE GRANTED ON December 17, 2021 (ECF No. 170)** |

**<u>DEFENDANT COURTNEY KELLN'S REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

The Securities and Exchange Commission's ("SEC") Opposition fails to demonstrate why this civil suit against Courtney Kelln ("Kelln")—who the SEC itself describes as an administrative assistant who worked entirely "at the direction" of an attorney almost thirty years her senior—should proceed to discovery and trial.  The SEC's own Complaint establishes Kelln's lack of substantial participation or intent with respect to the alleged fraudulent scheme, and its allegations are not well-pled or deserving of plausible inferences simply because the SEC says so in its Opposition.  The SEC's attempts to recast the language it carefully chose when writing the Complaint into something more cannot save the SEC from dismissal here.

The SEC chose to allege that Kelln worked "**at the direction**" of Sharp in performing basic "**administrative tasks**."  Compl. ¶¶ 44, 52-53, ECF No. 1 (emphases added).  Had it been able to allege that, like the other Defendants, Kelln promoted or sold a single share of any of the securities at issue, that she was informed of the content of any promotional campaigns, or that her salary was

1

in any way connected to any of the fraud schemes alleged in the Complaint, the SEC would have done so. However, it could not and it did not. Those choices by the SEC are fatal to its claims against Kelln. To that end, most of the allegations the SEC's Opposition points to do not even mention Kelln by name, but instead lump her together with the "Sharp Group" or reference communications sent under names with no alleged connection to her. Quite simply, the SEC seeks to hold someone it chose to describe as a low-level administrative employee civilly liable under a sweeping and unprecedented theory of scheme liability that inappropriately draws on criminal conspiracy law. There is no authority, and the SEC cites none, for that approach. Contrary to the SEC's breathless claim that Kelln wants the Court to draw all inferences in her favor, all Kelln asks is that the Court look to the language of the Complaint the SEC drafted.

Regardless, the SEC fails to establish personal jurisdiction over Kelln. The declaration and documents submitted by the SEC to attempt to shore up the Complaint's facial failings do not establish that she directed any fraudulent activity into the United States and raise more questions than they answer.

Finally, the SEC's requested remedies are inadequately pled and mostly time barred. The SEC's arguments in its Opposition are meritless.

The Complaint against Kelln should be dismissed in its entirety with prejudice.

## I.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST KELLN

The SEC agrees that all of the claims against Kelln require substantial participation in the alleged "pump and dump" scheme, and that the claims for fraud and aiding and abetting (Counts 1, 2, 8, and 9) additionally require that she acted with scienter. As discussed in Kelln's Motion to Dismiss ("Motion"), the Complaint does not contain the kind of particularized and plausible factual allegations required to establish that a low-level administrative assistant like Kelln

substantially participated in a fraud or acted with scienter.  *See* Mem. Supp. Mot. Dismiss 7-16, ECF No. 148.  The SEC's Opposition does not demonstrate otherwise.

To begin, the SEC's explanation of why it has adequately pled Kelln's substantial participation in the scheme rests on three fundamental flaws.

First, the SEC conflates substantial participation and scienter.  It circularly argues that Kelln substantially participated in the scheme because she had knowledge of it, and that she had knowledge of it because she substantially participated in the scheme.  *See, e.g.*, Opp'n 5-6, ECF No. 167.  For instance, the SEC argues that Kelln's role was "more involved than the 'mailroom clerk' because she understood and furthered the purpose of the scheme."  *Id.* at 6.  The elements of substantial participation and scienter are wholly independent, however, and one cannot be used to infer the other.  *See SEC v. Durgarian*, 477 F.Supp.2d 342, 352-53 (D. Mass. 2007), *aff'd sub nom. SEC v. Papa*, 555 F.3d 31 (1st Cir. 2009).  Kelln's lack of substantial participation in this case is no different from the mailroom clerk in *Lorenzo* because she was only "tangentially involved in dissemination" of the fraudulent information at issue—she simply performed "administrative tasks" to deliver securities from one place to another at the behest of Sharp.  *Lorenzo v. SEC*, 139 S. Ct. 1094, 1101 (2019); Compl. ¶¶ 49, 52-53.  The SEC's belated assertion in its Opposition that Kelln's behavior is "more analogous to that of an attorney" is directly contradicted by its own allegations that she acted "at the direction of" an actual attorney, Sharp, and cannot magically transform Kelln into more than the doer of "administrative tasks" that the SEC chose to allege in its Complaint.  *Compare* Opp'n 12 *with* Compl. ¶¶ 49, 52-53.

Second, the SEC improperly conflates civil scheme liability with criminal conspiracy.  According to the SEC, "[a]s in many conspiracies (and businesses)," liability turns on "whether all of those employees work together to make an illegal business function."  Opp'n 7.  The SEC

3

even cites a parallel criminal complaint against Kelln, along with other inapplicable criminal cases, as support here. *Id.* at 8-9. But the SEC cannot shore up its failure to adequately plead under Rule 9(b) all the elements it must in a civil case by citing to a different action, by a different agency, with different legal bases and burdens of proof. The SEC simply cannot cloak itself in the lower burdens inherent in civil cases but then try and take advantage of the expansive nature of criminal conspiracy caselaw. The SEC has no statutory authority to charge or rely upon allegations of a "conspiracy," even if it had properly alleged it here, which it of course has not. *See* 17 C.F.R. § 202.5(f) ("[N]either the [SEC] nor its staff has the authority or responsibility for instituting, conducting, settling, or otherwise disposing of criminal proceedings. That authority and responsibility are vested in the Attorney General and representatives of the [DOJ].").[1]

Third, the SEC conflates allegations concerning the "Sharp Group" generally with Kelln's more limited role. Most notably, the Opposition relies heavily on paragraphs 5 and 6 of the Complaint, which generically describe the operations of the "Sharp Group" overall, to now argue that Kelln "teamed with defendants Frederick Sharp and Yvonne Gasarch" to engage in a wide range of misconduct. Opp'n 2, 5. Here again, the SEC attempts to rewrite its own allegations. The words "teamed with" do not appear in the Complaint in relation to how Kelln and Sharp interacted. Instead, throughout the Complaint, the SEC alleges that attorney Sharp directed Kelln, to perform "administrative tasks." But in any event, the SEC's Complaint cannot be saved by "group pleading," which is clearly impermissible and has been routinely dismissed by courts in this District. *See* Mem. Supp. Mot. Dismiss 9 (collecting authority unrebutted by the SEC).

---

[1] In any event, the criminal cases cited by the SEC are readily distinguishable because they deal with defendants who masterminded a fraud scheme and directed fraudulent nominee transactions—not a low-level employee, like Kelln, who unwittingly undertook those directions. *See United States v. Wey*, 2017 WL 237651, at *1-2 (S.D.N.Y. Jan. 18, 2017); *United States v Bilzerian*, 926 F.2d 1285, 1289-91, 1302 (2d Cir. 1991).

The SEC's scienter arguments fare no better. According to the SEC, its scienter allegations are "grounded by statements Kelln made" about the 5% ownership rule. Opp'n 8 (citing Compl. ¶¶ 135-36). But the SEC altogether ignores that those communications are actually from "The Cuntessa," and the SEC does not dispute that the Complaint contains no allegations connecting "The Cuntessa" to Kelln. *See* Mem. Supp. Mot. Dismiss 4, 6, 14. There is simply no well-pled basis to infer Kelln's scienter from such communications. This is especially true now that the SEC has filed two extremely detailed declarations in support of its Complaint and has not, because it apparently cannot, connected Kelln to those statements. The fact that the SEC did not even attempt to address this omission in its Opposition or its second Declaration of Trevor T. Donelan ("Second Declaration") after Kelln raised it tells the Court all it needs to know about whether the SEC has adequately pled scienter.

Moreover, while the SEC contends there is no "requirement that a defendant expected to profit personally," Opp'n 9, caselaw is clear that "[t]he prospect of 'personal financial gain . . . weigh[s] heavily in favor of a scienter inference.'" *SEC v. Duncan*, 2021 WL 4197386, at *14 (D. Mass. Sept. 15, 2021) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007)). The Complaint's allegation that Kelln made only about $100,000 per year from 2010 to 2019—less than one half the annual salary of an SEC attorney—is thus very much relevant. It is implausible to conclude that Kelln knowingly or recklessly engaged in a billion-dollar fraud in exchange for secretaries' wages, especially where the other defendants are alleged to have pocketed millions of dollars in profits. *See* Compl. ¶¶ 81-82, 129, 140, 173, 174, 176, 212-14, 219. And here again, the SEC has failed to even attempt to connect that money to any of the specific securities frauds alleged, despite this issue being clearly raised in Kelln's Motion. Kelln is not asking for inferences to be drawn in her favor—she is simply asking for the SEC's Complaint

5

to be analyzed for what it is: a shotgun approach at ensnaring her in this wide-ranging fraud scheme.

Accordingly, all of the claims against Kelln should be dismissed for failure to plead the required elements of substantial participation and/or scienter.

## II.   THE COURT LACKS PERSONAL JURISDICTION OVER KELLN

The SEC admits that it must go beyond the pleadings and "put forward 'evidence of specific facts'" sufficient to establish personal jurisdiction over Kelln. Opp'n 18 (quoting *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016)). But even after filing the Second Declaration with multiple exhibits in support of its Complaint, the SEC still fails entirely to meet its burden to show Kelln had "minimum contacts" with the United States—*i.e.*, that her related conduct made it such that she purposefully and voluntarily availed herself of the laws of the United States. *SEC v. Elliott*, 2020 WL 7185854, at *3-4 (D. Mass Dec. 7, 2020) (finding personal jurisdiction where defendant "made false representations to United States investors" and "went to Florida and met with an investor there"). Instead, the SEC's Complaint and its Second Declaration confirm that Kelln carried out her simple administrative duties at the direction of Sharp entirely from Canada and never purposefully or voluntarily reached into the United States. And there are no allegations, as in *Elliott*, that Kelln communicated with or otherwise misled any US-investors.

The Second Declaration offered by SEC enforcement accountant Donelan attaches: (1) two emails sent by "Quezon Group LLC" to an US-based transfer agent, *see* Second Decl. ¶ 9(a), (c), ECF No. 168, Ex. A, ECF Nos. 168-1 & 168-2, and Ex. C, ECF Nos. 168-4 & 168-5; (2) a FedEx label, which accompanied a transfer agent package sent to the United States, *see* Second Decl. Ex. B, ECF No. 168-3; and (3) a "report" of unknown provenance purporting to show communications between "celtic consultants llc," "esquire corporate services srl," "courtney," and a US-based lawyer, Scott Lawler's office, *see* Second Decl. Ex. D, ECF No. 168-6.

6

These exhibits, on their face, do not plausibly connect Kelln to fraudulent activity directed to the United States. In all 41 pages, Kelln's name appears as the sender of any communication to the United States exactly *one* time—in the return address box of a FedEx label. However that alone does not plausibly demonstrate that "Kelln caused the package to be sent"—especially where the associated address has been redacted and the contents of the package are not registered to Kelln. Second Decl. ¶ 9(b). But more importantly, even if that is true, FedExing a transfer agent package is precisely the type of low-level administrative task Kelln performed exclusively at Sharp's direction—as alleged in the Complaint. It is not "purposely availing" herself of the privilege of conducting busines in the United States. Nor does Donelan or the SEC allege facts to infer that Kelln was even aware of the contents of any of the emails or documents. Donelan noticeably declined to state under oath that he created the "report," or to otherwise indicate from where he obtained the information contained therein. And despite claiming that the "report" shows communications between "Kelln . . . and Lawler," *id.* ¶ 10(a), "Scott Lawler" appears exactly once on the chart—one more time than "Courtney Kelln."

Donelan attempts to connect Kelln to the Quezon emails by baldly asserting that the "metadata associated with the attachment[s]" shows that Kelln "authored" the attachments. *Id.* ¶ 9(a), (c). The underlying metadata has not been provided. Similarly, Donelan declares, without any identified support, that Kelln's home address matches the addresses associated with "celtic consultants llc" and "esquire corporate services srl." *Id.* ¶ 10(a), (b). But again, the addresses have been redacted. At a minimum, therefore, before Kelln is required to answer the Complaint, Kelln should be permitted to test Donelan's assertions by jurisdictional discovery, including taking Donelan's deposition about the unsupported assertions raised in his declarations.

Accordingly, the Complaint should be dismissed with prejudice for lack of personal jurisdiction, or, in the alternative, the Court should authorize jurisdictional discovery of the SEC and Donelan.

### III.   THE SEC'S PRAYERS FOR RELIEF SHOULD BE DISMISSED OR STRICKEN

The SEC's prayers for disgorgement, a permanent injunction, civil monetary penalties, and collateral bars should all be dismissed, or stricken. The SEC's arguments to the contrary are unavailing.

First, the SEC concedes that to be entitled to disgorgement, it must plausibly allege a causal connection between Kelln's net profits and the alleged illegal conduct. Opp'n 15 (citing *SEC v. Esposito*, 260 F.Supp.3d 79, 92 (D. Mass. 2017)). But the SEC has not offered any well-pled allegations in support thereof. Rather, the SEC relies entirely on a single, wholly-conclusory statement that from 2010 to 2019 "Kelln received 'more than $1 million in funds *derived* from the Sharp Group's conduct.'" *Id.* (quoting Compl. ¶ 62). Without more, the SEC fails to plausibly allege how those amounts are causally connected to any individual wrongdoing as opposed to her annual salary for her job as Sharp's administrative assistant.[2] The omission of such allegations is especially glaring given that the SEC's accountant admits he has been actively investigating this matter since 2017, Second Decl. ¶ 5, and yet he still offers nothing to connect Kelln's 10-year cumulative earnings to any part of the alleged illegal scheme. *Cf. Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020) (limiting disgorgement to wrongdoer's net profits from the illegal activity).

Second, in arguing that dismissal of its prayer for a permanent injunction is premature, the SEC ignores this Court's decision in *SEC v. Jones*, 300 F.Supp.3d 312 (D. Mass. 2018). In *Jones*,

---

[2] The SEC's cases underscore why there is no basis for disgorgement from Kelln. The defendant in *Esposito*, unlike Kelln, actively promoted and sold the securities that put ill-gotten gains in the defendants' pockets. *Esposito*, 260 F.Supp.3d at 90. And *SEC v. Happ*, 392 F.3d 12, 32 (1st Cir. 2004) deals with the inapplicable situation of calculating disgorgement in insider trading cases.

8

this Court allowed a motion to dismiss for a permanent injunction, holding that where "in a practical sense, there is nothing remaining to be enjoined" the injunction "would simply admonish [the defendant] to obey the federal securities laws." *Id.* at 318. Such is the case here. The Complaint does not contain any well-pled allegations that *Kelln's* conduct continued after April 2017. *See, e.g.*, Compl. ¶¶ 225-28. It is not enough for the SEC to point to a single conclusory allegation that the collective activities of the "Sharp Group" (not Kelln specifically) are "continuing through the present," Opp'n 16 (citing Compl. ¶ 5), all the more so because the Complaint contains no substantive allegations about "Sharp Group" illegal sales after 2019. *See* Compl. ¶¶ 42-230.³ Similarly, Donelan's conclusory statement in his first declaration that he read a referral from FINRA that indicated that "Kelln and Kaitz may still be involved in promotional schemes" cannot possibly justify an injunction against Kelln. Donelan Decl. ¶ 104, ECF No. 1-13. Whatever that referral related to (like much of the Donelan declarations, we are left to guess), Donelan only states that Kelln sold shares of stock, not that she had anything to do with a promotion or fraud scheme. *See id.* And if that is even true, selling stock by Kelln is completely different than what the SEC alleged in the Complaint against her, so it is irrelevant to the Court's consideration of an injunction.

Third, as outlined in several co-Defendants' briefing, the National Defense Authorization Act of 2021 ("NDAA") does not retroactively extend the statute of limitations for disgorgement stemming from scienter-based claims. The majority of Kelln's alleged conduct occurred more than five years before the Complaint was filed, as demonstrated in the chart that follows on the next page.

---

³ Moreover, the cases cited by the SEC on this point are inapposite and/or nonbinding. *See SEC v. Gentile*, 939 F.3d 549, 564 (3d Cir. 2019) (nonbinding authority); *SEC v. DFRF Enters. LLC*, 384 F. Supp. 3d 129 (D. Mass. 2019) (motion for default judgment); *SEC v. Eagleeye Asset Mgmt., LLC*, 11-cv-11576-WGY, ECF No. 124 (D. Mass. Dec. 12, 2012) (entering injunction as part of final judgment after trial without discussion of defendants' conduct).

| Transaction | Date | Compl. ¶¶ | Time-Barred? | Date Time-Barred |
|---|---|---|---|---|
| Stevia First – Round 2 | Oct. 9, 2013 | ¶ 86 | Yes | Oct. 9, 2018 |
| Stevia First – Round 3 | Dec. 2, 2014–Mar. 31, 2015 | ¶¶ 116-17, 124 | Yes | Mar. 31, 2020 |
| Stevia First – Round 4 | 2016–Feb. 28, 2017 | ¶¶132, 134-36 | No | |
| Arch | In or around 2013 | ¶ 155 | Yes | In or around 2018 |
| Garmatex | Mar. 2017–Apr. 2017 | ¶¶ 225-28 | No | |

The SEC's failure to timely file this action against Kelln is especially glaring given that the investigation into this matter started as early as 2017—four years before the NDAA was enacted. Allowing the SEC to lay in wait for years would be prejudicial and unfair to Kelln. *See Gabelli v. SEC*, 568 U.S. 442, 449 (2013). Accordingly, the claims against her based on rounds two and three of Stevia First sales and the Arch sales must be dismissed as time-barred.

The SEC's argument that "the clock only begins to run after Kelln is found in the United States" cannot save those claims. Opp'n 17. The SEC misleadingly attempts to leverage Kelln's personal jurisdiction argument about the lack of any Complaint allegations that she visited the United States *in connection with the alleged scheme* into a concession that she has never entered the United States *for any purpose*, and therefore could not be served. Kelln has not made such a concession. Nor could she, as she has visited the United States numerous times for vacations and other personal reasons having nothing to do with her work for the Sharp Group. *Cf. SEC v. Wey*, 246 F.Supp.3d 894, 934-35 (S.D.N.Y. 2017) (finding that the statute of limitations had not run where the defendant conceded that he never came to the United States). That said, it is *the SEC's burden* to allege facts showing Kelln could not be served, and no such facts appear in the Complaint. *See Elliot*, 2020 WL 7185854, at *2.

\*   \*   \*   \*

For the foregoing reasons, the Complaint should be dismissed in its entirety with prejudice as to Kelln. Alternatively, the prayers for relief should be stricken in accordance with her Motion.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: January 3, 2022 | /s/ *Kevin B. Muhlendorf* |
|  | Kevin B. Muhlendorf (*pro hac vice*) |
|  | Pamela L. Signorello (BBO# 651483) |
|  | Holly J. Wilson (*pro hac vice*) |
|  | WILEY REIN LLP |
|  | 2050 M Street NW |
|  | Washington, DC 20036 |
|  | Tel.: 202.719.7000 |
|  | Fax: 202.719.7049 |
|  | KMuhlendorf@wiley.law |
|  | PSignorello@wiley.law |
|  | HWilson@wiley.law |

*Counsel for Defendant Courtney Kelln*

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2022, I filed the foregoing via the Court's ECF system, which electronically serves a copy on all counsel of record.

/s/ *Kevin B. Muhlendorf*
Kevin B. Muhlendorf